Caroline K. Simon, J.
In the central portion of Suffolk County, Middle Country Road (Route 25) intersects William Floyd Parkway (Route 46) at a point adjacent to Brookhaven National Laboratory, the Parkway being the major north-south artery in that area. Pursuant to section 30 of the Highway Law, and as part of its program of improvement of New York State’s highway system, the then Department of Public Works appropriated a portion of claimants’ land in fee, and another portion by way of permanent. easement for the purpose of widening Route 25 and providing access roads for a bridge over the Parkway.
The proceeding was described as Coram-Middle Island, East, S.H. No. 8291, Suffolk County, Map No. 250, Parcels No. 347 and 348, and Map No. 294, Parcel No. 399.
The parties have stipulated February 25, 1966 as the date of taking. The claim was timely filed with the Clerk of the Court of Claims and in the office of the Department of Law on June 1, 1967. It has neither been assigned nor tried, nor submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the maps and descriptions filed in the Suffolk County Clerk’s office, copies of which are attached to the claim, and the same are incorporated herein by reference.
Claimants submit proof of ownership of the property by means of a bargain and sale deed dated April 11, 1966 from the Long Island State Bank & Trust Company, grantor, to Franz Nieolay and Margaret Nieolay, grantees, recorded in the Suffolk County Clerk’s office on April 16, 1956 in Liber 4098 at pages 106 through 108.
Before the State’s takings, the property consisted of an elongated triangularly shaped parcel of land fronting on Route 25 *614 to the north for a distance of 74 feet, with a depth of 356 feet on the straight side of the triangle, 360 feet on the hypotenuse, and a width of 17.8 feet at its southerly tip, comprising 16,376 square feet in area. The land was level and was improved by a one-family, two-story dwelling with full basement, a well, cesspool, and driveway circling the house.
The area was zoned “ J-2 ” Business for the first one hundred feet in depth, the balance was zoned “B” Residential, according to the Zoning Ordinance of the Town of Brookhaven. The house was used by claimants as their dwelling, and one main floor room and the basement were devoted to office and storage space for a business Mr. Nicolay conducted from the premises.
Parcel No. 347 of Map 250 consisted of a three-foot strip of land extending the entire 74 feet of frontage along the existing highway. This controlled access fee taking measured 220 square feet. Immediately adjacent to it, Parcel No. 348 of the same map consisted of an additional parcel of 6,520 square feet also taken in fee. It also extended the full 74 feet on the north, with a depth of 119 feet on the westerly side of the plot, curving along the southerly edge to a point 74 feet from the front line on the easterly side of the property. It measured 6,520 square feet in area. This latter taking included the portion containing the house and well.
Parcel No. 399 of Map 294 consisted of a permanent easement for slopes. It was a triangularly shaped plot adjacent to and extending from the southerly side of Parcel 348. It had a base of 16 feet and sides of 88 feet and 80 feet, and measured 370 square feet in area.
Claimants’ appraiser was one of those expert witnesses who are competent in the field despite the fact that they have not attended courses in the subject of appraising, nor are they members of appraisal societies. The court nevertheless found this witness to be reliable in his ultimate appraisal figures and conclusions, though his presentation of the basis for these conclusions makes it difficult to use his testimony within the legal requirements for such proof.
Claimants’ written appraisal assessed the direct damage as a result of the taking at $31,567.70, to which he added $6,500 as consequential damage, for a total of $38,067.70. On direct examination he particularized his direct damage by ascribing $11,100 to the value of the land, and $20,467.70 to the improvements. He stated that he reviewed claimants ’ bills for expenses incurred as a result of the State’s taking, including business time lost and rentals of substituted office and home space, and estimated this total to be an additional $6,500.
*615 On cross-examination, this expert admitted that he had not considered any depreciation factor in his valuation, nor had he considered functional or economics obsolescense in the calculation. He stated that he had assessed the before-value of the property at $34,567.70. He deducted at salvage value $2,400 for the land (60 front feet at $40 a front foot) and $600 for the improvements.
On claimants’ counsel’s motion, five of the appraiser’s comparable sales were withdrawn from his report for lack of comparability. This expert also stated that he had considered the subject property as being primarily zoned Residential “ B ” on the main road before the taking and on the service road after the taking, except for a small strip of “ J-2 ” business land which remained after the taking.
Although the Assistant Attorney-General did not move to strike claimants’ appraisal, he contended that it could be used only to check the State’s value estimates, since it was based solely upon land value plus improvement cost, less depreciation. In support of this argument, Evans v. State of New York (31 A D 2d 565) was cited. In that case claimants’ expert treated a custom-built home as a specialty, which the court held was improper absent evidence of uniqueness. There claimants’ written appraisal was never received into evidence by the trial court, and their expert offered no testimony based upon the market data approach.
In the instant trial, claimants ’ written appraisal was received into evidence. It contained 25 comparable sales, five of which were stricken as noted above. The court accepted the remaining sales for such weight and consideration as they warranted, bearing in mind in its evaluation of their comparability the many dissimilarities in time of sale and place and type of structure.
The State’s appraiser established his before-value by ascribing a front foot value of $60 to the land. He compared this value with a square foot value of $.275 for 16,376 square feet. He thus arrived at a rounded median figure of $4,500 for the land. He valued the building and other improvements, using the market data approach, at $12,500, producing a total before-value of $17,000. His after-value was set at $200 for the remaining land, which resulted in a total damage figure of $16,800. He calculated his direct damage using a value of $.275 per square foot for 7,110 square feet rounded to $1,960, to which he added $550 for the land improvements and $11,700 for the dwelling, arriving at a direct damage total of $14,210. To this sum he added $2,340 as consequential damage to the land and $250 for the land improvements, a total of $16,800.
*616 This expert stated that he used the market data approach with reproduction cost less depreciation as a check. He stated that he valued the land as business property before the taking because of its zoning and location, and that he considered economic obsolescence as a factor due to the residence being located on commercial land. His after-value of the land was based upon comparable sales of building sites, with consideration given to the minimum size of the subject plot and its nonconformity to existing zoning.
In a recent Court of Appeals decision, Chief Judge Fuld has summarized the guide lines to be followed in takings such as the instant claim. He said “It is settled that, as a general proposition, the measure of damages in partial taking cases is the difference between the value of the whole before the taking and the value of the remainder after the taking.” (Diocese of Buffalo v. State of New York, 24 N Y 2d 320, 323.)
As a corollary to this principle, Judge Keating has described the purpose of appropriation awards in an opinion decided February 20, 1969. “ The claimant is only to be placed in the same position as he was before the taking, not in a better financial or operating position because of the taking to the detriment of the State which is only required to make just compensation.” (Rose v. State of New York, 24 N Y 2d 80, 90.)
Claimants’ appraiser set $11,100 as the before-value of the land. On cross-examination he gave an after-value of $3,000 to the land and its improvements but nevertheless set the damage to the land at $11,100. The court cannot agree with the logic of the damage being $11,100, since if the amount of the damage equals the before-value, there could be no after-value. Claimant must be reimbursed for the fair value of the taking, but he is not to be enriched by the taking, as would be the result were he to receive damages for a complete taking and also have some residual value in the remainder.
The court recognizes the law to be that “ claimant should not be placed in a better position after the taking than it would have been if no taking occurred.” (Cooney Bros. v. State of New York, 24 N Y 2d 387, 393.)
Claimants’ appraiser expressed no opinion as to the highest and best use of the property. The State’s expert stated that he regarded its highest and best use as residential, although he recognized that the site was zoned for business purposes to a depth of one hundred feet. He maintained that the area was in a location remote from business activity, and since the remaining property would be located on a service road, with no direct access to the main highway, he regarded it as economically *617 obsolescent. He pointed to adjoining properties which were improved and used for residential purposes as support for his theory.
The court finds on its viewing of the property and the evidence that a productive business is being carried on and a home maintained, and that the highest and best use of the property is its present use as business and residential, as its zoning warrants.
Claimants’ combined use of the place for business and home was made unsuitable for a considerable period of time. In mitigation of damages, other home and office quarters were rented temporarily. The rental cost for substitute office space was $415 from August 25,1966 to December 2,1966, and for substitute home space was $300 per three months.
Claimants argue that they are entitled to damages to reimburse them for moving costs and temporary home and office rents paid by them and necessitated by the taking. The property was taken against claimants’ will by the exercise of the State’s sovereign right of eminent domain on the principle that the greater needs of the total community outweighed claimants’ requirements, use and ownership. Through no desire or fault of their own, they were put to expense. They assert that they can be made whole only when their reasonable expenses to carry on their business and occupy a domicile during the period their use of their property was denied to them are included in the reimbursement they receive.
The right to reimbursement of expenses under such circumstances was recently recognized in a Florida case, Jacksonville Expressway Auth. v. Du Pree Co. (108 So 2d 289 [Fla.]) cited in volume 4 of Nichols on Eminent Domain at page 658 (n. 14).
Though subdivision 13-b of section 30 of the Highway Law does warrant compensation for moving expenses for both commercial and residential properties, the court finds no statutory authority nor legal precedent to support an award on the facts as claimants present them. The instant claim does not come within the Highway Law’s provisions.
The court recognizes that rental and moving costs to claimants were caused by the condemnation. The expenditures made by claimants enabled them to continue their business and to have living quarters for themselves. Actually it was an effort to lessen damages during the period when their building was appropriated by the State from its plot and moved and rebuilt by claimants on its present site.
Their attempt was in line with the requirement that “No recovery may be for losses which the person injured might have prevented by reasonable efforts and expenditures.” (25 C. J. S., *618 Damages, § 33, as quoted in Mayes v. State of New York, 18 N Y 2d 549, 554.)
The theory claimants advance is recognized. Section 164 on Eminent Domain in volume 29A of Corpus Juris Secudum at page 709 states in its headnote: “ In determining the compensation to be awarded for taking property by eminent domain, it is generally held proper to consider expenses necessarily incurred by reason of the improvement in question.”
Under the law as it presently stands, the court finds no warrant for the inclusion of moving costs or temporary rental expenses in its award, although it does find that the remainder of claimants’ property was consequentially damaged due to the .taking./ It agrees with the State’s appraiser that the permanent easement damage was equivalent to a fee taking and should be assessed at 100% of its value.
Items paid by claimants for which they ask reimbursement include:
Survey and mapping..................... $210.00
Highway Work Permit................... 11.50
Variance Permit ........................ 15.00
Replacing damaged tiling................. 625.06
Replacing shrubbery and lawn............ 1,211.40
Sand and G-ravel for driveway............ 140.00
Relocation of telephone................... 16.31
Moving house, laying foundation, new well and cesspool ........................ $13,275.00
The State’s taking eliminated claimants’ circular driveway and access to the rear. The driveway was essential to the operation of claimants’ business. It was necessary for them to purchase adjacent property to regain the same frontage which had existed before the taking. This was done at a cost of $4,000. The new arrangement results in a driveway and parking lot somewhat smaller than heretofore.
Claimants were compelled to move their house further back from the road frontage. A zoning variance was required and obtained. The cost of those items was considered by the court and included in the court’s damage-figure and award.
The court has viewed the subject property and those com-parables submitted by the parties which were not stricken during the trial. It has arrived at its determination independent of the valuations testified to by the experts, but giving due weight and consideration to their testimony and all of the evidence, and the benefit gained by its viewings.
*619 The court finds that the fair and reasonable value of the land prior to the taking was $7,400, based either upon $100 a front foot or $.45 a square foot, rounded; that the combination home and office, together with land improvements, was worth $18,000; and that the total before-value of the property was $25,400.
The court finds that the after-value of the remaining land was $400, and that claimants were damaged in the sum of $25,000, of which $3,200 is direct damage to the land at $.45 a square foot for 7,110 square feet (rounded); $18,000 is for the building and the land improvements as heretofore stated; and $3,800 is for consequential damage to the remainder.
Claimants are entitled to an award of $25,000 for all damage, direct and consequential, together with interest thereon from February 25, 1966 to August 25, 1966, and from June 1, 1967 to the date of entry of judgment herein.